**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger**

Civil Action No. 14-cv-02299-MSK-KMT

**COLORADO FOOD PRODUCTS, INC.,**
    Plaintiff,

v.

**EMPACADORA Y PROCESADORA DEL SUR, INC.,**

    Defendant.

---

**OPINION AND ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT**

---

**THIS MATTER** comes before the Court pursuant to the Plaintiff's ("CFP") Motion for Summary Judgment **(# 51)**, the Defendant's ("Empacadora") response **(#55)**, and CFP's reply **(#60)**; and Empacadora's Motion for Summary Judgment **(#52, 53)**, CFP's response **(#54)**, and Empacadora's reply **(#59)**.

## FACTS

The primary facts in this case are not materially in dispute. CFP is in the business of wholesale meat sales. It ships meat to distributors, who warehouse the meat while awaiting purchases orders from buyers. Empacadora is a meat packager located in Puerto Rico. In 2011, Empacadora began purchasing meat from CFP. Each transaction began with Empacadora's principal, Elvin Rivera, contacting CFP's representative, Javier Torres. The two men would negotiate quantities and prices. When an agreement was reached,[1] CFP contacted its Puerto Rican distributor and authorized the distributor to release the agreed-upon product to

---

[1]     Some of these agreements were reduced to writing, but most were not and the parties simply proceeded by oral agreement.

1

Empacadora. The distributor then sent a bill of lading to CFP that identified the quantities released to Empacadora. CFP then invoiced Empacadorafor the product reflected on the bill of lading. As discussed below, all of the invoices sent by CFP to Empacadora contained a provision stating that any unpaid balance would incur interest and if CFP brought a successful suit to collect sums owed it would be entitled to its attorney fees. The record reflects that, typically, Empacadora would pay the invoices on 30-day terms and that they never discussed the provision on the invoice pertaining to interest or attorney fees.

But in early 2013, a different situation arose. Due to a recordkeeping error, seventeen orders that were released to Empacadora between January and July 2013 were not recorded by CFP, and consequently, CFP did not send Empacadora invoices. CFP later discovered its error and during February 2014, issued invoices to Empacadora for the seventeen purchases in 2013. The net balance due for these invoices was approximately $350,000. Empacadora objected to the invoices, leading to the instant action.

CFP's Complaint **(# 3)** alleges three causes of action, all of which appear to arise under Colorado law: (i) breach of contract; (ii) unjust enrichment; and (iii) quantum meruit.

Both parties moved for summary judgment on somewhat collateral issues. CFP's Motion **(#51)** seeks "summary judgment" on the question of whether "provisions for attorney's fees and interest contained in [the] invoices . . . are additional terms properly included as part of the parties' contract for the sale of goods." (CFP argues that, pursuant to C.R.S. § 4-2-207, these provisions are "additional terms in a written confirmation" to which Empacadora lodged no prompt objection.)

Empacadora's Motion **(# 53)** seeks summary judgment in its favor on its affirmative defense of accord and satisfaction. Empacadora contends that in January 2014, Mr. Rivera and

Mr. Torres met to discuss the outstanding balance that CFP claimed that Empacadora owed. According to Empacadora, the parties agreed that the outstanding balance would be satisfied by payment of approximately $270,000 in monthly installments of $10,000. Empacadora also contends that CFP unilaterally repudiated the agreement a few months later, at which point Empacadora stopped making the monthly payments.

## ANALYSIS

### A. Standard of review

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Thus, the primary question presented to the Court in considering a Motion for Summary Judgment or a Motion for Partial Summary Judgment is: is a trial required?

A trial is required if there are material factual disputes to resolve. As a result, entry of summary judgment is authorized only "when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Savant Homes, Inc. v. Collins*, ___ F.3d ___, ___, 2016 WL 25576, *2 (10th Cir. 2016). A fact is material if, under the substantive law, it is an essential element of the claim. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if the conflicting evidence would enable a rational trier of fact to resolve the dispute for either party. *Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013).

The consideration of a summary judgment motion requires the Court to focus on the asserted claims and defenses, their legal elements, and which party has the burden of proof. Substantive law specifies the elements that must be proven for a given claim or defense, sets the standard of proof, and identifies the party with the burden of proof. *See Anderson v. Liberty*

*Lobby*, *Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). As to the evidence offered during summary judgment, the Court views it the light most favorable to the non-moving party, thereby favoring the right to trial. *See Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1215 (10th Cir. 2013).

Motions for summary judgment generally arise in one of two contexts – when the movant has the burden of proof and when the non-movant has the burden of proof. Each context is handled differently. When the movant has the burden of proof, the movant must come forward with sufficient, competent evidence to establish each element of its claim or defense. *See* Fed. R. Civ. P. 56(c)(1)(A). Presumably, in the absence of contrary evidence, this showing would entitle the movant to judgment as a matter of law. However, if the responding party presents contrary evidence to establish a genuine dispute as to any material fact, a trial is required and the motion must be denied. *See Leone v. Owsley*, ___ F.3d ___, ___, 2015 WL 7567457, *4 (10th Cir. 2015); *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013).

A different circumstance arises when the movant does not have the burden of proof. In this circumstance, the movant contends that the non-movant lacks sufficient evidence to establish a *prima facie* case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The moving party must identify why the respondent cannot make a *prima facie* showing; that is, why the evidence in the record shows that the respondent cannot establish a particular element. *See Collins*, ___ F.3d at ___. If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, then a trial is required. Conversely, if the respondent's evidence is inadequate to establish a *prima facie* claim or defense, then no factual determination of that claim or defense is required and summary may enter. *See Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007).

When cross-motions for summary judgment are filed, the Court usually considers them independently in order to honor the parties' burdens of proof and to favor the non-movant's right to trial. *See Constitution Party of Kansas v. Kobach*, 695 F.3d 1140, 1144 (10th Cir. 2012).

**B. CFP's Motion**

CFP's motion is not, as a technical matter, a summary judgment motion contemplated by Fed. R. Civ. P. 56(a). It does not request a resolution of any claim, defense or part of a claim or defense. Indeed, even if CFP is correct in all respects, the Court cannot grant a "judgment" to CFP as a matter of law on its contention that the parties' contract included provisions for attorney fees and prejudgment interest. Nevertheless, the Court will evaluate it to determine whether the Court can deem, as a matter of law, the parties' contract to contain those additional terms. To do so, the Court evaluates the motion in two respects, determining: (i) whether the facts that underlie the contentions are materially disputed, and (ii) if not, whether the law compels a particular outcome or relief in light of the absence of any factual dispute.

It is apparently undisputed that, with regard to the seventeen product deliveries received by Empacadora between January and July 2013, the parties did not have any express agreement as to whether unpaid invoices bore interest or whether Empacadora was liable for CFP's attorney fees incurred in collecting on the invoices. CFP argues that, pursuant to C.R.S. § 4-2-207, the additional interest and fee terms became included in the parties' agreements. That statute provides that when a merchant accepts an offer to enter into a contract, and the acceptance or confirmation occurs via a writing, "sent within a reasonable time," and adds terms not initially contained in the offer, those supplemental terms become part of the parties' contract unless one of three conditions is met: (i) the offer expressly limited acceptance to the terms offered; (ii) the supplemental terms "materially alter" the offer; or (iii) the offeror objects to the supplemental

5

terms "within a reasonable time after notice of them is received." C.R.S. §§ 4-2-207(1) (acceptance or confirmation must be sent "within a reasonable time"), (2)(a)-(c) (criteria precluding supplemental terms from taking effect).

Empacadora does not appear to dispute that CFP's post-performance invoices may constitute the type of "confirmations" contemplated by § 2-207(1), and thus, the Court turns to Empacadora's contention that CFP's attempts to impose additional terms via the 2013 invoices were ineffective because either: (i) CFP's 2014 invoices for purchases made in 2013 were not "sent within a reasonable time" of the parties' original agreement (and CFP's performance), or (ii) Empacadora objected to those additional terms "within a reasonable time" after receiving them.

C.R.S. § 4-2-207(1) provides that additional terms must be proposed within a reasonable time and subsection (2)(c) provides that a recipient of proposed additional terms may object to them within a reasonable time. Both provisions require the respective parties to act within a "reasonable time" from some triggering event. C.R.S. § 4-1-205(1) explains that the meaning of the phrase "reasonable time" in a particular context "depends on the nature, purpose, and circumstances of the action." What is a reasonable time is necessarily a question of fact. *See Stroh v. American Recreation & Mobile Home Corp.*, 530 P.2d 989, 992 (Colo. App. 1975).

Here, it is undisputed that CFP did not invoice the January – July 2013 deliveries to Empacadora until approximately February 2014, a delay of between seven and thirteen months. It is also apparently undisputed that Empacadora first objected to CFP's demands for interest and fees during the course of this litigation, in or about September 2014, approximately seven months after receiving the late-sent invoices. Finally, it is undisputed that CFP included the

same or similar provisions regarding interest and attorney fees in all of the invoices sent Empacadora since 2011.

The underlying undisputed facts do not resolve the underlying issue – what is a reasonable amount of time to send an invoice or to object to its terms. Certainly, the parties' long course of dealing that repeatedly included interest and fee provisions without objection from Empacadora suggests that both parties were aware of the terms, but such course of dealing does not inform the factual issue of whether the delay invoicing or in objecting was unreasonable. The delay in CFP's invoicing Empacadora for the 2013 deliveries is considerable and is mirrored almost precisely by Empacadora's delay in objecting to the interest and fee terms. As Empacadora points out, if it was "reasonable" for CFP to wait seven or more months before proposing the interest and fee terms in the invoices for the 2013 deliveries, it would seem to reason that it was equally "reasonable" for Empacadora to wait those same seven months before objecting to the terms. In such circumstances, this Court finds that the question of the reasonableness of both parties' actions cannot be resolved as a matter of law, and instead, must be resolved by the fact-finder. Accordingly, CFP's motion for summary judgment is denied.

### C. Empacadora's motion

Empacadora seeks summary judgment on its affirmative defense of accord and satisfaction. The facts underlying this issue are somewhat disputed.

By January 2014, Empacadora was delinquent in paying off its balance to CFP. CFP's principal, Mr. Gurrentz, dispatched Mr. Torres to Puerto Rico to collect upon those invoices. Mr. Torres met with Mr. Rivera and other officials of Empacadora in January 2014. According to Mr. Torres, they discussed "all the invoices" that CFP had sent and "all the payables on their side." Eventually, Mr. Torres and Empacadora reached an agreement "of what they have on the

books that they owe to [CFP]," an amount that totaled approximately, $ 270,000.[2]  Mr. Torres states that he and Empacadora agreed that Empacadora would pay that amount at a rate of $ 10,000 per month.[3]  Mr. Torres testified that this agreement was not formally memorialized, though he worked with the Empacadora officials to compile a document listing certain purchase orders and amounts owed on them, and Mr. Torres signed that document as evidence of the agreement.  Upon returning to CFP, Mr. Torres informed Mr. Gurrentz and CFP's accountant, Mr. Windholz, of the total amount that Empacadora agreed to pay and the amounts of the weekly payments, and neither objected to the total amount as being inaccurate or too low.  The record is mostly silent as to what happened thereafter – the parties remark that Empacadora made some of the scheduled payments and that CFP repudiated the alleged agreement upon learning of it during the course of this litigation, but no other details are apparent.

CFP contends that Mr. Torres was dispatched to Empacadora solely to collect the outstanding debts, and was not authorized to negotiate any reductions in Empacadora's outstanding balance.  Mr. Gurrentz, also disputes Mr. Torres's version of events upon his return from Puerto Rico: specifically, Mr. Gurrentz denies that Mr. Torres told anyone at CFP that he negotiated down the amount owed by Empacadora, that there was any new agreement, and that Mr. Torres ever presented a written document summarizing the alleged agreement to anyone at CFP.  Mr. Windholz asserts that Mr. Torres only stated that Empacadora would begin making monthly payments to CFP, but agrees that Mr. Torres never informed him of any agreement to reduce the balance Empacadora owed.

---

[2]  CFP appears to allege that this alleged agreement would reduce the balance owed to it by approximately $ 80,000.

[3]  Mr. Torres initially testified at his deposition that the payments were to be made weekly. He later executed an affidavit correcting that assertion to reflect an agreement as to monthly payments.

Empacadora contends that the affirmative defense of accord and satisfaction extinguishes its obligation on the seventeen invoices at issue. The parties agree that Colorado law applies.

Under Colorado law, an "accord" is a contractual agreement whereby an obligee on an existing debt agrees to accept alternate performance in satisfaction of the obligor's existing duty, with the intention that performance of the new agreement will discharge the existing obligation. *See FDIC v. Inhofe*, 16 F.3d 371, 374-75 (10th Cir. 1994); *see also In re Unioil, Inc.*, 962 F.2d 988, 994 (Bankr. D.Colo. 1992), *citing Anderson v. Rosebrook,* 737 P.2d 417, 419 (Colo.1987). An accord does not extinguish the original obligation. It suspends the original obligation until the accord is either fully performed or breached. *See Bakehouse & Assocs., Inc. v. Wilkins*, 689 P.2d 1166, 1168 (Colo. App. 1984). If the accord is fully performed, it satisfies the underlying obligation. *See Tinley v. Poly-Tripex Technologies, Inc.*, No. 07-cv-01136-WYD-KMT, 2009 WL 812150, at *11 (D. Colo. March 26, 2009) (*citing R.A. Reither Const., Inc. v. Wheatland Rural Elec. Ass'n*, 680 P.2d 1342, 1344 (Colo. App. 1984)). But if the accord is breached, the obligee may sue on either the original obligation or the accord. *Bakehouse*, 689 P.2d at 1168.

Under Colorado law, Empacadora must show that 1) the parties entered into a contract addressing payment on the seventeen invoices; 2) that they knew or should have known that the new contract changed the amount and timing of payment by Empacadora on the invoices; and 3) that Empacadora fully performed its obligations under the new agreement. *See* Colorado Jury Instructions (Civil, 4th Ed.) § 30:28; *see also* Restatement of Contracts (Second) § 281; *Anderson*, 737 P.2d at 419; *Robert W. Thomas & Ann McDonald Thomas Revocable Trust v. Inland Pacific Colo., LLC*, No. 11-cv-03333-WYD-KLM, 2012 WL 4443309, at *10 (D. Colo. Sept. 25, 2012).

There is no apparent dispute that Mr. Torres was sent by CFP to meet with Empacadora to discuss and obtain payment on the seventeen invoices. There is no dispute that he did so and that he and representatives from Empacadora entered into an agreement. This would appear to satisfy the first element that Empacadora must prove, but CFP contends that it is not bound by the agreement because Mr. Torres lacked authority[4] to compromise the debt. Empacadora responds that, regardless of whether or not CFP <u>actually</u> authorized Mr. Torres to enter into an accord, Mr. Torres had the <u>apparent</u> authority to do so. These issues require the Court to examine issues of agency.

Generally, a principal is bound by an agent's actions, regardless of whether the agent exercises "actual" authority or "apparent" authority, and regardless of whether the principal has knowledge of the agent's conduct. *Johnson v. State Farm Mut. Auto. Ins. Co.*, ___ P.3d ___, 2014 WL 5033217 (Colo.App. Oct. 9, 2014), (*citing Citywide Banks v. Armijo,* 313 P.3d 647, 652 (Colo. App. 2011)). An agent acts with "apparent authority" when the principal engages in actions that would cause a third person to reasonably believe that the agent has the authority to undertake some act on behalf of the principal, even if the principal does not actually intend to so authorize the agent. *Nat'l Cash Register Co. v. Lightner,* 388 P.2d 781, 787–88 (Colo. 1964).

Here, the record shows that literally all of Empacadora's dealings with CFP were through Mr. Torres. Mr. Torres testified that he personally solicited Empacadora as a customer for CFP, and that Empacadora contacted him to place its orders. Mr. Rivera, Empacadora's

---

[4] CFP highlights certain inconsistencies in Mr. Torres's testimony as to whether his purpose in traveling to Puerto Rico was to "negotiate" with Empacadora or merely "collect" on the outstanding balance. Although the Court finds Mr. Torres's testimony less inconsistent than CFP believes, Mr. Torres's ultimate testimony – that he negotiated an agreement by which CFP would accept a reduced amount in full satisfaction of the outstanding balance – is clear. Thus, whether Mr. Torres traveled to Empacadora with the specific intent of negotiating an agreement as to the outstanding balance, or whether Mr. Torres initially intended only to collect but at some point thereafter shifted his focus to one of compromise is largely irrelevant.

representative, was asked in his deposition, "who would you interact with at [CFP] if you were having a problem regarding payment?," to which he answered "Javier Torres." When asked who he would speak with "if you were having a problem regarding the credit that you were on (sic) at [CFP]," Mr. Rivera again responded "Javier Torres." Mr. Rivera testified that when he sent checks to CFP to make a payment "it [went] directly to Javier Torres." Indeed, when asked if he had <u>ever</u> spoken with anyone else at CFP besides Mr. Torres, Mr. Rivera answered "no."[5] Actually, this is consistent with the affidavits tendered by CFP: the affidavits of Mr. Gurrentz, Mr. Windholz, and Mr. Telgenhoff (CFP's General Manager), all of which expressly state that these individuals have never had written or spoken communication with any representative of Empacadora. In sum, CFP has not come forward with evidence of any other person at CFP advising Empacadora of any limitations on the scope of Mr. Torres' authority. All of the evidence in the record supports Mr. Rivera's statement that, "from Empacadora's perspective, Javier Torres was [CFP]."

In addition, it was CFP who sent Mr. Torres to collect the sum reflected on 17 invoices from Empacadora. It may not have empowered him to negotiate new terms on the existing debt, but it directed him to discuss the debt with Empacadora, and it never communicated a limitation in his authority to Empacadora.

The Court finds that Empacadora has carried its burden of showing that CFP, through its own actions created Empacadora's reasonable belief that Mr. Torres was authorized to negotiate

---

[5] Mr. Rivera noted that his secretary would occasionally exchange e-mails with Carol Hardy at CFP, a person he understood to be Mr. Torres' subordinate. These communications related to Empacadora's request for certain products, and Mr. Rivera understood that Mr. Torres "would tell Carol hardy to send the e-mail to [the distributor]" to release product to Empacadora. (In actuality, Ms. Hardy was part of CFP's Accounts Receivable Department and Mr. Torres would have to secure Ms. Hardy's approval before product could be released to Empacadora, but there is no evidence in that record that CFP ever communicated this fact to Empacadora.)

11

a reduction in Empacadora's outstanding balance in January 2014. *See e.g. Rush Creek Solutions, Inc. v. Ute Mountain Ute Tribe*, 107 P.3d 402, 407 (Colo.App. 2004) (designation by tribe of CFO to sign contracts on its behalf, coupled with tribe's failure to advise third-party that CFO's authority did not extend to waiving tribal immunity, warranted finding that CFO's waiver was done with apparent authority). The Court finds that the undisputed facts show that Mr. Torres had the apparent authority to act on behalf of CFP in entering into the accord with Empacadora,

As to the second element, there is no dispute. The purpose of the accord was to change the amount owed and payment timing for purchases reflected in the 17 invoices. Both Mr. Torres and Empacadora understood that and memorialized the agreement on a compilation of invoices that Mr. Torres signed on behalf of CFP.

Turning to the third element – performance of the accord, there is no evidence. Indeed, it appears undisputed that Empacadora never completed performance. The circumstances of why that happened remain murky on the record, but at some point, Empacadora stopped making the monthly payments called for under the accord. This failure to perform prevents entry of judgment on Empacadero's behalf. It may be that the some justification for non-performance excused Empacadora, but such issues have not been identified in the briefs in conjunction with the pending motions. Here, the Court cannot find as a matter of law that the undisputed facts show that the "satisfaction" portion Empacadora's – that is, performance – has been met. The Court therefore denies Empacadora's Motion for Summary Judgment on the affirmative defense of accord and satisfaction.

## CONCLUSION

For the foregoing reasons, CFP's Motion for Summary Judgment **(# 51)** and Empacadora's Motion for Summary Judgment **(# 52, 53)** are **DENIED** on the terms set forth herein. Because this case will proceed to trial, the parties shall begin preparation of a Proposed Pretrial Order consistent with the requirements set forth in Docket # 33, and shall jointly contact the Court within 14 days to schedule a Pretrial Conference.

Dated this 4th day of March, 2016.

**BY THE COURT:**

*/s/ Marcia S. Krieger*

Marcia S. Krieger
Chief United States District Judge